JOHN T. WINGFIELD, administrator, plaintiff in error, *vs.* JOHN A. DAVIS, defendant in error.

1. Where a purchaser under bond for title, sold by absolute deed to claimant, who bought without notice that his vendor was in possession under bond, and who occupied the property continuously for a period longer than seven years, exercising acts of ownership, such claimant acquired a valid title by prescription.

2. The possession of the premises in dispute by claimant and the exercise of acts of ownership, was notice to the holder of the true title of the adverse claim.

Prescription. Bonds for title. Notice. Before Judge CLARK. Lee Superior Court. November Term, 1874.

For the facts, see the decision.

VASON & DAVIS; GEORGE W. WARWICK, for plaintiff in error.

LYON & JACKSON, for defendant.

WARNER, Chief Justice.

This was a claim case, and on the trial thereof the court charged the jury, in substance, that the claimant was protected in the possession of the land levied on under his prescriptive title thereto, and refused to charge the contrary thereof, as requested, to which charge, as given, and refusal to charge as requested, the plaintiff excepted.

1. It appears from the evidence in the record that in the year 1859, Wiley sold to Graves a settlement of land containing one thousand three hundred acres, for $8,000 00 and

took his notes therefor, payable as follows: $2,000 00 due 1st January, 1860, $2,000 00 due 1st January, 1862, $2,000 00 due 1st January, 1864 and 2,000 00 due 1st January, 1866. Wiley gave him a bond to make him a title to the land when the notes should be paid. Wiley died and Wingfield became his administrator. In November 1867, a judgment was obtained in favor of Wingfield, administrator, against Graves, for $1,169 15 besides interest, for the unpaid purchase money, due for the land. Wingfield, as administrator, filed a deed in the clerk's office, conveying the title to the land to Graves on the 15th of May, 1873, and on the same day had the entire tract of one thousand three hundred acres levied on, as the property of Graves, to satisfy said judgment. All of the land was sold by the sheriff, and the proceeds thereof applied to the fi. fa. levied thereon, except four hundred acres on the west side of Muckalee creek, which was claimed by Davis. The claimant introduced in evidence a warrantee deed from Graves to himself, for the premises in dispute, dated 23d of February, 1864, for a valuable consideration acknowledged to have been paid therefor to Graves. It also appears that Graves was in possession of the land at the time of the conveyance of the four hundred acres to Davis, and that Davis had no notice that he was in possession of it under a bond for title from Wiley. Wiley died in 1869 or 1870, and his estate was not represented until one year had elapsed after his death. It also appears from the evidence in the record that Davis, the claimant, went into possession of the land purchased from Graves, soon thereafter, and had been in the continuous possession thereof, up to the time of trial, claiming it as his own, putting improvements thereon, and had cleared up and cultivated a large portion thereof. The question made by the record in this case is, whether Davis, the claimant, had a good title to the premises in dispute by prescription? The Code declares that "actual adverse possession of lands by itself, for twenty years, shall give good title by prescription against every one, except the state or persons laboring under the disabilities

hereinafter specified. Adverse possession of lands, under *written evidence of title*, for seven years, shall give a *like title* by prescription:" Code, sections 2682, 2683. The title to the land was in Wiley, and the possession of the four hundred acres by Davis, under written evidence of title as the owner thereof, as disclosed by the evidence in the record, was *adverse* to the title and interest of Wiley in and to the land, and he in his lifetime, and his administrator after his death, could have brought an action of ejectment against Davis, and recovered possession of it.

2. The possession of the four hundred acres by Davis, exercising the acts of ownership over it as disclosed in the record, was *notice* to Wiley and his legal representative, that he was holding and claiming the land *adversely* to his title. In our judgment, the claimant had a good prescriptive title to the land in dispute under the statute, and that there was no error in refusing to charge the jury as requested, or in the charge as given, in view of the evidence contained in the record.

Let the judgment of the court below be affirmed.